## UNITED STATES DISTRICT COURT

### NEW JERSEY DISTRICT COURT

| | |
|---|---|
| **NICOLE MURRAY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | **Case No. _____** |
| **Plaintiff,** | |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **LIFETIME BRANDS, INC.,** | |
| **Defendant.** | |

Plaintiff NICOLE MURRAY ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on her personal knowledge of her own acts and, otherwise, upon information and belief including based on investigation of counsel.

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff, by and through undersigned counsel, brings this action both on her own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of New Jersey, to redress the unlawful commercial practices employed by Defendant LIFETIME BRANDS, INC. (hereinafter "Defendant") regarding unlawful terms and conditions that purport to govern products purchased from Defendant's website, www.mikasa.com.  Specifically, and as detailed more fully below, at the time Plaintiff and Class Members purchased items from Defendant, Defendant's website contained a consumer contract entitled "Terms of Use" (hereinafter "Terms of Use") that purported to impose illegal exculpatory and other such provisions upon all users of its website and purported to nullify certain legal duties and responsibilities Defendant owes its consumers and prospective consumers.

1

2.      Defendant has imposed the unfair, one-sided provisions in its Terms of Use in violation of certain statutory and common law standards and New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq.*

## PARTIES

3.      Plaintiff Nicole Murray is an individual adult resident and citizen of Atlantic County, New Jersey, and is a member of the Class alleged herein.

4.      Plaintiff purchased four fruit bowls through Defendant's website, www.mikasa.com, on or about May 23, 2016, while located in New Jersey.  Defendant billed Plaintiff for the four fruit bowls in New Jersey and delivered the four fruit bowls to Plaintiff in New Jersey.  Upon receiving the four fruit bowls, Plaintiff determined that the products did not meet her quality expectations as depicted on Defendant's website, and is an aggrieved customer based thereon.  Plaintiff thereafter reviewed Defendant's "Terms of Use" on Defendant's website while located in New Jersey.  Plaintiff and Class Members are "consumers" and/or "prospective consumers" as defined by N.J.S.A. 56:12-15.

5.      Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Lifetime Brands, Inc. is a Delaware corporation with its headquarters located at 1000 Stewart Avenue, Garden City, New York 11530.  Defendant is a "seller" as described in N.J.S.A. 56:12-15.  As such, Defendant is a citizen of Delaware and New York.

6.      At all relevant times, Defendant sold products by means of its website, www.mikasa.com, in the State of New Jersey, utilizing unfair, one-sided provisions contained in its "Terms of Use" consumer contract which violate New Jersey law.

2

7.     Defendant markets its goods and services throughout the State of New Jersey by means of its website.  As such, New Jersey courts maintain a significant interest in regulating Defendant's conduct which emanates from New Jersey.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendant's home state, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

9.     This Court has jurisdiction over the Defendant named herein because Defendant has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its goods and services in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

10.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

11.     Defendant markets dinnerware and related household products throughout the State of New Jersey via its website, www.mikasa.com.

12.     Plaintiff and Class Members were users of Defendant's website and/or purchased products through Defendant's website.  Their rights with respect to products were purportedly governed by a website document entitled "Terms of Use" ("Terms of Use").

13.     The "Terms of Use" purported to be a binding agreement between Defendant and all parties who use the website and/or purchase any of the products available on Defendant's website, as shown below.

> We offer this Website, including all information and services available from this Website, to you conditioned upon your acceptance of all the terms, conditions, policies and notices stated herein.  YOU CONTINUED USE OF THIS WEBSITE CONSTITUTES YOUR AGREEMENT TO THESE TERMS OF USE.
>
> By accessing this Website, you agree to be bound by the Terms of Use set forth herein.  If at any time you do not agree to these Terms of Use, please do not use this Website.

14.     At all relevant times, the representatively binding provisions in the "Terms of Use" imposed illegal conditions upon the customers who purchase products from Defendant's website. Despite clear law to the contrary, Plaintiff and Class Members, upon purchase of goods and/or services from Defendant's website, were purportedly forced to forego virtually any claim under tort or negligence arising from their use of the website and from their purchase of goods or services from the website.

15.     At all relevant times, the "Terms of Use" also included a provision that requires Plaintiff and Class Members to indemnify Defendant and its personnel regarding any activity from the internet accounts of Plaintiff and Class Members.  The "Terms of Use" likewise failed to indicate which, if any, of its provisions were unenforceable against visitors from New Jersey pursuant to the TCCWNA.

16.     All of these provisions violated the TCCWNA.  Plaintiff's counsel previously notified Defendant of violations contained on Defendant's website via a letter dated July 7, 2016, which was sent via overnight delivery.  Since that date, Defendant has purported to make changes in some of the language of its "Terms of Use" in order to address the challenged violations, including removal from the "Terms of Use" of the "**Limitations on Liability**" and "**Indemnification**" provisions noted below, a fact which underscores strongly the correctness and

validity of Plaintiff's position and of the factual and legal contentions set forth in this Complaint. By letter dated July 21, 2016, counsel for Defendant, among other things, threatened Plaintiff and Plaintiff's counsel with a sanctions motion pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Plaintiff would vigorously, and successfully, oppose any such motion.

A.   <u>Terms of Use Which Purport to Exculpate Defendant From Liability for Any and All Tortious Actions and Purport to Deny Plaintiff's Grounds for Redress Violate the TCCWNA.</u>

17.   New Jersey law specifically prohibits the type of exculpatory clause contained in Defendant's "Terms of Use".  Exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place."  *See Martinez-Santiago v. Public Storage*, 38 F.Supp.3d 500, 512-513 (D.N.J. 2014) ("[h]ere, the exculpatory provision purports to hold [defendant] harmless for most losses incurred by consumers, except those that are the direct result of [defendant's] fraud or willful conduct. Although Plaintiff plausibly pleads that such a broad exculpatory provision is not permitted under New Jersey law, the provision purports to be enforceable in the lease agreement. Plaintiff states a valid claim that this is the kind of provision that TCCWNA was designed to address."); *see also Marcinczyk v. State of N.J. Police Training Comm'n*, 203 N.J. 586, 593 (2010).

18.   At all relevant times, Defendant purported to disclaim liability, among other things, for "ANY ECONOMIC LOSSES (INCLUDING WITHOUT LIMITATION LOSS OF REVENUES, PROFITS, CONTRACTS, BUSINESS OR ANTICIPATED SAVINGS) OR ANY LOSS OF GOODWILL OR REPUTATION, OR ANY LOSS OR CORRUPTION OF DATA, OR ANY SPECIAL OR INDIRECT OR CONSEQUENTIAL LOSSES ARISING OUT OF YOUR USE OF THE WEBSITE; IN ANY CASE WHETHER OR NOT SUCH LOSSES WERE

WITHIN THE CONTEMPLATION OF US AT THE DATE ON WHICH THE EVENT GIVING RISE TO THE LOSS OCCURRED."   At all relevant times, this provision purported to bar consumers from asserting any cause of action against Defendant for its negligence or failure to exercise a basic standard of care in their dealings with consumers.   Likewise, the provision attempted to absolve Defendant of its legal responsibility to exercise reasonable care and avoid creating an unreasonable risk of harm to consumers.

19.     Under well-established New Jersey law, Defendant owes a duty of care to Plaintiff to avoid creating an unreasonable risk of harm.   Plaintiffs harmed by Defendant's unreasonable conduct are entitled to collect damages.   This provision purports to remove Defendant's responsibility to act reasonably and purports to bar Plaintiff from redress for a breach of Defendant's standard of care.   This provision is contrary to New Jersey law. *See, e.g. Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 448 (1993).

20.     As such, the exculpatory clause violates the TCCWNA.   As noted above, Plaintiff's counsel previously notified Defendant of violations contained in Defendant's website.   Since that date, Defendant has purported to make changes in some of the language of its "Terms of Use" in order to address violations, a fact which underscores strongly the correctness and validity of Plaintiff's position and of the factual and legal contentions set forth in this Complaint.

B.   Terms of Use Which Purport to Deny Rights, Responsibilities and Remedies Under the New Jersey Products Liability Act ("NJPLA") Violate the TCCWNA.

21.     Additionally, at all relevant times the above-referenced provisions purported to absolve Defendant of its responsibility to manufacture and sell safe products.   The provision further purported to bar Plaintiffs from exercising their legal right to seek redress under the NJPLA. *See, N.J.S.A.* 2A:58C-1, *et al.*

22.     Namely, among other things, at all relevant times Defendant stated under its "**Limitations on Liability**" provision that:

> WE WILL NOT BE LIABLE FOR ANY ECONOMIC LOSSES (INCLUDING WITHOUT LIMITATION LOSS OF REVENUES, PROFITS, CONTRACTS, BUSINESS OR ANTICIPATED SAVINGS) OR ANY LOSS OF GOODWILL OR REPUTATION, OR ANY LOSS OR CORRUPTION OF DATA, OR ANY SPECIAL OR INDIRECT OR CONSEQUENTIAL LOSSES ARISING OUT OF YOUR USE OF THE WEBSITE; IN ANY CASE WHETHER OR NOT SUCH LOSSES WERE WITHIN THE CONTEMPLATION OF US AT THE DATE ON WHICH THE EVENT GIVING RISE TO THE LOSS OCCURRED.

23.     These provisions purport to deprive customers of their rights and remedies under the NJPLA and purport to absolve Defendant of its duty to manufacture and distribute a reasonably safe product free from defects.

24.     The New Jersey Products Liability Act was passed based on Legislative findings "that there is an *urgent need* for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products, including certain principles under which liability is imposed and the standards and procedures for the award of punitive damages." *N.J.S.A.* 2A:58C-1 (emphasis added).

25.     Under the Act, "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: (a.) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b.) failed to contain adequate warnings or instructions, or (c.) was designed in a defective manner." *N.J.S.A.* 2A:58C-2.

26.     Plaintiffs who prevail under the NJPLA are entitled to recover any and all damages resulting from their injury, including punitive damages if properly demonstrated. *See e.g. N.J. Civ.*

*Jury Charge* 1.12(O); *Fischer v. Johns-Manville Corp.*, 103 *N.J.* 643, 670-71 (1986) ("punitive damages are available in . . . strict products liability actions when a manufacturer is (1) aware of or culpably indifferent to an unnecessary risk of injury, and (2) refuses to take steps to reduce that danger to an acceptable level. This standard can be met by a showing of 'a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.'") (internal citations omitted).

27.     Given the clear danger of unsafe products as recognized by the New Jersey Legislature, to purport to deny consumers a cause of action for harm arising from a potentially unsafe product is contrary to established New Jersey law.  Additionally, there will be a chilling effect if consumers are led to believe such exculpatory provisions are enforceable.  Defendants will be able to purport to contract away their statutorily fixed obligation to refrain from producing dangerous products.  Likewise, Plaintiffs would mistakenly believe they are barred from seeking relief for serious injury arising from defective products.  This would result in a reduction in costs for unscrupulous manufacturers and sellers while companies creating safe products would be burdened with a higher cost of doing business.  The ultimate effect would be a proliferation of unsafe products and injured consumers believing they have no grounds for redress.  Clearly, this was not the Legislature's intent when the NJPLA was enacted.

28.     It *was*, however, the Legislature's intent in drafting the TCCWNA to prevent against this type of harm.  A provision that purports to absolve Defendant of liability resulting from its dangerous products is unlawful.  Plaintiffs have a legal right under the NJPLA to bring suit against manufacturers and sellers of dangerous products.  Likewise, Defendant has a statutorily imposed duty to refrain from introducing dangerous products into the marketplace and is liable for same.

29.      Defendant has a clear responsibility under the NJPLA to manufacture and sell safe products.  At all relevant times the "Terms of Use" purported to remove that legal responsibility and absolve Defendant from responsibility for resulting injury to consumers.

30.      These "Terms of Use" therefore violate the TCCWNA.  As noted above, Plaintiff's counsel previously notified Defendant of violations contained in Defendant's website.  Since that date, Defendant has purported to make changes in some of the language of its "Terms of Use" in order to address violations, a fact which underscores strongly the correctness and validity of Plaintiff's position and of the factual and legal contentions set forth in this Complaint.

C.   Terms of Use Which Purport to Require Plaintiff and Class Members to Indemnify Defendant and its Personnel Violate the TCCWNA.

31.      Under New Jersey law, it is "clearly established that 'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.'"  *Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 516 (D.N.J. 2014) (quoting *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)); *Castro v. Sovran Self Storage, Inc.*, 2015 WL 4380775, at \*9-\*10 (D.N.J. July 16, 2015) (citing *Martinez-Santiago*).  Additionally, under New Jersey law, unilateral contractual indemnity provisions are illegal where they are unilateral and the result of unequal bargaining power between the parties.  *See Consumers Power Co. v. Curtiss-Wright Corp.*, 780 F.2d at 1096 (3d Cir. 1986); *Berrios v. United Parcel Service*, 627 A.2d 665 (1993).

32.      At all relevant times, Defendant's "Terms of Use" required Plaintiff and Class Members "TO BE FULLY RESPONSIBLE FOR (AND FULLY INDEMNIFY US AGAINST) ALL CLAIMS, LIABILITY, DAMAGES, LOSSES, COSTS AND EXPENSES, INCLUDING LEGAL FEES, SUFFERED BY US AND ARISING OUT OF ANY USER CONTENT YOU POST TO THE WEBSITE AND ANY BREACH OF YOUR REPRESENTATIONS AND

WARRANTIES OR THESE TERMS OF USE BY YOU OR ANY OTHER LIABILITIES ARISING OUT OF YOUR USE OF THE WEBSITE, OR THE USE BY ANY OTHER PERSON ACCESSING THE WEBSITE USING YOUR COMPUTER OR INTERNET ACCESS ACCOUNT."

33.     At all relevant times, this language purported to go further than is permitted by the above authority, and plainly violated the TCCWNA.   As noted above, Plaintiff's counsel previously notified Defendant of violations contained in Defendant's website.   Since that date, Defendant has purported to make changes in some of the language of its "Terms of Use" in order to address violations, a fact which underscores strongly the correctness and validity of Plaintiff's position and of the factual and legal contentions set forth in this Complaint.

D.   <u>Terms and Conditions Which Purport to Remove Defendant's Responsibility for Certain Acts of Third Parties and Purport to Bar Plaintiff's Grounds for Redress Violate the TCCWNA.</u>

34.     At all relevant times the "Terms of Use" violated New Jersey law in that they purported to absolve Defendant of its duty to protect customers against harm arising from third-party acts. *See, e.g. Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 284 (1982) (upholding duty imposed on business owner to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons…[and] the public interest lies in providing a reasonably safe place for a patron to shop[.]"); *Trentacost v. Brussel*, 82 *N.J.* 214, 231 (1980) (landlord owes duty to tenant to provide reasonable security measures protecting against criminal acts of third-parties).

35.     Defendants have a clear duty under the common law to provide a safe environment for their customers to shop. *See, Butler*, 89 *N.J.* at 284.   The fact that Defendants sell their products online should not absolve them of their well-defined duty to protect customers from the criminal

acts of third-parties.  Indeed, in today's modern-society the internet has become the shopping mall and third-party computer hackers the pickpockets.[1]

36.     The Federal Trade Commission ("FTC") and Federal Communications Commission ("FCC") have promulgated guidelines for businesses to safeguard against the disclosure of sensitive consumer information to third-party criminal hackers. According to the FTC, "it is almost impossible to be in business and not collect or hold personally identifying information — names and addresses, Social Security numbers, credit card numbers, or other account numbers — about your customers, employees, business partners, students, or patients. If this information falls into the wrong hands, it could put these individuals at risk for identity theft."[2] Accordingly, the FTC instructs business owners to take safeguards to prevent against the disclosure of customer information to criminal third-parties and to follow state and federal notification requirements if and/when a breach occurs.  *Id.*  Since 2007, the FTC has issued a guidebook entitled "Protecting Personal Information:  A Guide for Business," which describes a "checklist []" of practices that form a "sound data security plan."  *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 256 (3d Cir. 2015).  Such guidebook, updated in November 2011, is available for download from the FTC's website at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited Apr. 26, 2016). Such guidebook contains recommendations for how businesses should safeguard against the disclosure of sensitive consumer information to third-party criminal hackers.

---

[1] Practical Law, *Date Protection in [the] United States: Overview*, http://us.practicallaw.com/6-502-0467#a762707 ("The proliferation of security breaches in recent years has led to an expansion of . . . privacy laws, regulations and guidelines which is becoming one of the fastest growing areas of legal regulation.").

[2] Federal Trade Commission, *Information Compromise and the Risk of Identity Theft: Guidance for Your Business* (2004), https://www.ftc.gov/tips-advice/business-center/guidance/information-compromise-risk-identity-theft-guidance-your.

37.     Likewise, the FCC, in connection with the Department of Homeland Security, the National Cyber Security Alliance and The Chamber of Commerce promulgates a set of standards for business owners to follow to protect consumer information from third-party criminal hackers. Namely, according to the FCC, businesses are under an obligation "to do more to protect against growing cyber threats."[3] How a business "handle[s] and protect[s] . . . data is central to the security of [the] business and the privacy expectations of customers, employees and partners." *Id.* at PDS-1. Under the FCC's guidelines "[a]ll companies should develop and maintain clear and robust policies for safeguarding critical business data and sensitive information[.]" *Id.* at PDMI-1.

38.     Indeed, the FCC explicitly acknowledges, "[p]rivacy is important for your business and your customers. Continued trust in your business practices, products and secure handling of your clients' unique information impacts your profitability. Your privacy policy is a pledge to your customers that you will use and protect their information in ways that they expect and that adhere to your legal obligations . . . [c]ustomers . . . expect you to make their privacy a priority . . . you will be held accountable for what you claim and offer in your policy." *Id.* at PDS-2. Indeed, emerging technology offers "cyber criminals many new ways to victim your business, scam your customers and hurt your reputation." *Id.* at SF-1. As such, business owners are directed to implement various action items including training plans for employees, protections against online fraud, protections against malware and fake antivirus offers and other malicious software. *Id.* at SF-1 to SF-3.

39.     In no uncertain terms, the FCC warns business owners of the consequences of failing to take proper security measures to protect against third-party criminal acts:

---

[3] Federal Communications Commission, *Cyber Security Planning Guide*, https://transition.fcc.gov/cyber/cyberplanner.pdf.

> Website security is more important than ever. Web servers, which host the data and other content available to your customers on the Internet, are often the most targeted and attacked components of a company's network. Cyber criminals are constantly looking for improperly secured websites to attack, while many customers say website security is a top consideration when they choose to shop online. As a result, it is essential to secure servers and the network infrastructure that supports them. The consequences of a security breach are great: loss of revenues, damage to credibility, _legal liability_ and loss of customer trust.

*Id.* at WS-1. Additionally, the FCC endorses the use of Operational Security measures to identify critical protected information, analyze threats to and vulnerability of that information and countermeasures available to mitigate those threats. *Id.* at OS-1. Explicitly, the FCC relays that if a business "accepts payments by credit or debit card[s], it is important to have security steps in place to ensure . . . customer information is safe." *Id.* at PC-1.

40.     With these standards in mind, the United States District Court, District of New Jersey recently upheld a claim against business owners who failed "to implement reasonable and appropriate security measures" protecting their online clients' information from data breaches effectuated by third-party hackers. *F.T.C. v. Wyndham Worldwide Corp.,* 10 F.Supp.3d 602, 608-09 (D.N.J. 2014) (denying defendant online hotel company's motion to dismiss and agreeing with the FTC that online companies' substandard online security measures were cause in fact of plaintiffs' injuries – despite intervening acts of third-party hackers.), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

41.     Additionally, the New Jersey Legislature has devoted an entire statutory regime towards regulating online businesses safeguarding of customers' personal information from third-party criminal hackers. *See N.J.S.A.* 56:8-161, *et seq.* Failure to comply with the statutory mandates and take proper safeguards to notify and protect against the dissemination of customers' personal information – even if disclosed as the result of third-party criminal acts – is a tortious offense and actionable under the New Jersey Consumer Fraud Act. *N.J.S.A.* 56:8-3; 56:8-3.1.

42.     Despite the controlling statutes, common law and FTC and FCC guidelines, at all relevant times Defendant purported to absolve itself of the responsibility to take reasonable measures and statutorily fixed measures to protect consumers from third-party criminal hackers.

43.     At all relevant times, Defendant stated under its "**Limitations on Liability**" provision that:

> WE WILL NOT BE LIABLE FOR *ANY ECONOMIC LOSSES (INCLUDING WITHOUT LIMITATION LOSS OF REVENUES, PROFITS, CONTRACTS, BUSINESS OR ANTICIPATED SAVINGS)* OR ANY LOSS OF GOODWILL OR REPUTATION, *OR ANY LOSS OR CORRUPTION OF DATA, OR ANY SPECIAL OR INDIRECT OR CONSEQUENTIAL LOSSES ARISING OUT OF YOUR USE OF THE WEBSITE*; IN ANY CASE WHETHER OR NOT SUCH LOSSES WERE WITHIN THE CONTEMPLATION OF US AT THE DATE ON WHICH THE EVENT GIVING RISE TO THE LOSS OCCURRED. (Emphasis added.)

44.     The Legislature, Courts and Regulatory Agencies have identified steps Defendants are required to take to protect consumers from harms perpetuated by third-party criminals. The above language purports to absolve Defendants of these aforementioned responsibilities. Likewise, the provision purports to bar Plaintiffs from seeking redress under the common law or *N.J.S.A.* 56:8-161, *et al.* for Defendants failure to protect against third-party criminal acts.

45.     Defendant has a duty to take reasonable steps to prevent harm to consumers and prospective consumers arising from third-party criminal acts. Plaintiffs have a means of redress for Defendant's failure to take steps to protect against harms perpetuated by third-party criminals. At all relevant times this clause purported to take away these rights and responsibilities and thus violated the TCCWNA. As noted above, Plaintiff's counsel previously notified Defendant of violations contained in Defendant's website. Since that date, Defendant has purported to make changes in some of the language of its "Terms of Use" in order to address violations, a fact which underscores strongly the correctness and validity of Plaintiff's position and of the factual and legal contentions set forth in this Complaint.

14

E.   Terms of Use Which Purported to Deny Rights, Responsibilities and Remedies Under the New Jersey Punitive Damages Act ("NJPDA") Violated the TCCWNA.

46.     Additionally, at all relevant times Defendant purported to deprive Plaintiffs of their remedies under the NJPDA. *N.J.S.A.* 2A:15-5.9 *et seq*.

47.     As set forth above, Defendant represents that persons using their website are barred from seeking redress against Defendant "FOR ANY ECONOMIC LOSSES (INCLUDING WITHOUT LIMITATION LOSS OF REVENUES, PROFITS, CONTRACTS, BUSINESS OR ANTICIPATED SAVINGS) OR ***ANY LOSS OF GOODWILL OR REPUTATION***, OR ANY LOSS OR CORRUPTION OF DATA, OR ANY SPECIAL OR INDIRECT OR CONSEQUENTIAL LOSSES ARISING OUT OF YOUR USE OF THE WEBSITE; IN ANY CASE WHETHER OR NOT SUCH LOSSES WERE WITHIN THE CONTEMPLATION OF US AT THE DATE ON WHICH THE EVENT GIVING RISE TO THE LOSS OCCURRED." (Emphasis added.)

48.     This language purports to take away a clearly established right under the NJPDA to pursue punitive damages against defendants who with actual malice or wanton and willful disregard cause harm to foreseeable plaintiffs. *N.J.S.A.* 2A:15-5.12.

49.     Plaintiffs' right to pursue punitive damages against defendants who are recklessly indifferent to the consequences of harm to others is dually well recognized by New Jersey common law. *See, e.g. Smith v. Whitaker*, 160 N.J. 221, 241 (1999); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49 (1984); *see also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (noting that to justify punitive damages award defendant's conduct must be reckless); *DiGiovanni v. Pessel*, 55 N.J. 188, 190 (1970) (noting punitive damages may be justified by defendant's "conscious and deliberate disregard of the interests of others")(*quoting* William Prosser, *Handbook on the Law of Torts § 2* (2d ed. 1955)).

50.     A provision that purports to bar Plaintiffs from exercising their rights under the NJPDA is therefore unlawful.  Likewise, such a provision is shocking to the conscience in that it purports to absolve Defendant of its duty to refrain from willfully and/or recklessly creating an unreasonable risk of harm to others.  This provision purports to insulate Defendant even if an accusation of punitive damages is specifically pled in a complaint as required by *N.J.S.A.* 2A:15-5.11 and Defendant is expressly made aware its conduct is malicious or willfully and/or wantonly reckless.

51.     Such a provision is unlawful under the NJPDA in that it purports to deny to Plaintiffs their legal rights under the Act.  Additionally, the provision purports to absolve Defendant of any accountability in the form of punitive damages even if expressly made aware that its conduct is expressly malicious or wantonly and/or willfully reckless.

52.     This provision thereby violates the TCCWNA.  As noted above, Plaintiff's counsel previously notified Defendant of violations contained in Defendant's website.  Since that date, Defendant has purported to make changes in some of the language of its "Terms of Use" in order to address violations, a fact which underscores strongly the correctness and validity of Plaintiff's position and of the factual and legal contentions set forth in this Complaint.

F.   Defendant's "Terms of Use" Failed to Specify Which Provisions Are Unenforceable against Website Visitors from New Jersey and thus Violated the TCCWNA.

53.     N.J.S.A. 56:12-16 provides, in relevant part, that: "No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions **without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey**; provided, however, that this shall not apply to warranties."  (Emphasis added.)

54.     Accordingly: "***If N.J.S.A. 56:12–16 means anything, it must mean that the lease agreement needs to specify which provisions are unenforceable under New Jersey law***. Because Plaintiff alleges that a provision of the lease agreement is unenforceable under the TCCWNA—as explained above, Plaintiff states a claim that a provision of the agreement violates federal and/or state law—Plaintiff also has stated a claim under N.J.S.A. 56:12–16 in the absence of any indication of which provisions are enforceable and which are not under New Jersey law." *Martinez-Santiago*, *supra*, 38 F. Supp. 3d at 512 (emphasis added).

55.     At all relevant times, there was no statement or language in Defendant's "Terms of Use" indicating that the "**Limitations on Liability**" and/or the "**Indemnification**" provisions were not enforceable against website visitors from New Jersey.

56.     Indeed, under "**Miscellaneous**," Defendant concedes that portions of its Terms of Use may be "deemed unlawful, void," or ultimately unenforceable.  However, Defendant does not specify which provisions are unenforceable under New Jersey law.

57.     Accordingly, at all relevant times, the "Terms of Use" violated the TCCWNA.

G.  Defendant's "Terms of Use" Violate the TCCWNA

58.     New Jersey consumer protection laws, including the TCCWNA, are designed to protect consumers from the type of unconscionable and illegal provisions contained in Defendant's "Terms of Use" as set forth above.

59.     At all relevant times Defendant's imposition upon consumers of the above-described provisions in its "Terms of Use" violated certain common law standards and statutory provisions, including, but not limited to the New Jersey Product Liability Law, and thus violates TCCWNA, most particularly N.J.S.A. 56:12-15 and N.J.S.A. 56:12-16.

60.     Plaintiff therefore brings the statutory claim alleged herein to halt Defendant's continued use of the illegal language in its "**Limitations on Liability**," "**Miscellaneous**" and "**Indemnification**" provisions included in the "Terms of Use" on Defendant's website as of the date of purchase by Plaintiff and Class Members, and to impose those remedies provided for in the TCCWNA.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all members of the following Class:

> **All persons in the State of New Jersey who were exposed to the Terms of Use on Defendant's website, www.mikasa.com, during the applicable statute of limitations up to and including May 23, 2016.**

62.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment.

63.     Specifically excluded from the proposed Class is Defendant, its officers, directors, and employees.  Also excluded from the proposed Class is the Court, the Court's immediate family and Court staff.

## FRCP 23(a) Factors

64.     **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable.  The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records.  Plaintiff reasonably estimates that there are thousands of persons in the Class.

65.     **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously.

Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

66.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased goods and/or services typically sold predominantly for use as personal, family and household purposes, from Defendant's website, www.mikasa.com, and/or were displayed, exposed and/or offered the "Terms of Use" containing the illegal and predatory exculpatory provisions on that website.

67.    **Existence and Predominance of Common Questions of Law and Fact.** There are central and substantial questions of law and fact common to all Class Members that control this litigation and predominate over any individual issues.  Included within the common questions are the following:

a)    Whether at all relevant times Defendant included on its website, www.mikasa.com, a contract entitled "Terms of Use" ("Terms of Use") that included provisions entitled "**Limitations on Liability**" and "**Indemnification**";

b)    Whether at all relevant times the "**Limitations on Liability**" provisions of Defendant's "Terms of Use" contained exculpatory language which disclaims liability for virtually any claim under tort or negligence arising from their purchase of goods or services from the website, and absolved Defendant from any liability for intentional tortious conduct and from any liability for dangerous or substandard products;

c)    Whether at all relevant times the "**Indemnification**" provision of Defendant's "Terms of Use" required Plaintiff and Class Members to indemnify and hold

harmless Defendant and its personnel for any activity arising out of the use of Defendant's website by Plaintiff and Class Members;

d) Whether at all relevant times Defendant's "Terms of Use" failed to state that the "**Limitations on Liability**" and "**Indemnification**" provisions were not enforceable against website visitors from New Jersey, as required by N.J.S.A. 56:12-16;

e) Whether at all relevant times the exculpatory language in the "**Limitations on Liability**" provisions of Defendant's "Terms of Use" violated New Jersey statutory and common law;

f) Whether at all relevant times the indemnification language in the "**Indemnification**" provisions in Defendant's "Terms of Use" violated New Jersey statutory and common law;

g) Whether at all relevant times the exculpatory language in the "**Limitations on Liability**" provisions of Defendant's "Terms of Use" violated New Jersey's TCCWNA, N.J.S.A. 56:12-14 *et seq.*;

h) Whether at all relevant times the indemnification language in the "**Indemnification**" provisions of Defendant's "Terms of Use" violated New Jersey's TCCWNA, N.J.S.A. 56:12-14 *et seq.*;

i) Whether the Class is entitled to relief pursuant to N.J.S.A. 56:12-17, terminating the "**Limitations on Liability**" and "**Indemnification**" provisions contained in Defendant's "Terms of Use" insofar as they or any related or similar provisions are still present in the "Terms of Use" and continue to violate said provisions of law;

j)   Whether Plaintiff and Class Members are entitled to a civil penalty of not less than $100 for each violation of the TCCWNA pursuant to N.J.S.A. 56:12-17;

k)   Whether Plaintiff and Class Members are entitled, pursuant to N.J.S.A. 56:12-17, to reasonable attorneys' fees and court costs, and in what amount; and

l)   Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

## FRCP 23(b)(2)

68.   Defendant has acted on grounds generally applicable to the entire Class, thereby warranting final relief pursuant to N.J.S.A. 56:12-17, whereby the above-referenced language in the "**Limitations on Liability**" and "**Indemnification**" provisions of the "Terms of Use" would be terminated insofar as they or any related or similar provisions are still present in the "Terms of Use" and continue to violate said provisions of law, which would be appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

69.   Relief under N.J.S.A. 56:12-17, whereby the above-referenced language in the "**Limitations on Liability**" and "**Indemnification**" provisions of the "Terms of Use" would be terminated insofar as they or any related or similar provisions are still present in the "Terms of Use" and continue to violate said provisions of law, is necessary to prevent further predatory and illegal business practices by Defendant.  Money damages alone will not afford adequate and complete relief, and the relief sought is necessary to restrain Defendant from continuing to commit its predatory and illegal policies.

## FRCP 23(b)(3)

70. **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's TCCWNA claims are based on a common course of conduct. Whether at all relevant times the above-referenced language in Defendant's "**Limitations on Liability**" and "**Indemnification**" provisions contained in its "Terms of Use" imposed illegal burdens on consumers is an issue common to all members of the Class and is the predominant issue, and Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

71. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

   a) Given the size of the claims of individual Class Members, as well as the resources of Defendant, few, if any, could afford to seek legal redress individually for the wrongs alleged herein;

   b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense, and will ensure uniformity of decisions;

   c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments, and would create a burden on the court system;

   d) Without a class action, Class Members will continue to suffer as a consequence of Defendant's illegal and predatory conduct, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and

the Classes are entitled to appropriate civil penalties.  This action presents no difficulties that will impede its management by the Court as a class action.

72.     Certification is also warranted under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final relief pursuant to N.J.S.A. 56:12-17 appropriate with respect to the Class as a whole.

## CLAIM FOR RELIEF

Based on the foregoing allegations, Plaintiff's claims for relief include the following:

### COUNT I
### Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA")
### N.J.S.A. 56:12-14, *et seq.*

73.     Plaintiff hereby incorporates by reference each of the preceding and subsequent paragraphs of this complaint as though fully set forth herein.

74.     The TCCWNA declares "No seller ... shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller … as established by State or Federal Law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed."  N.J.S.A. 56:12-15.

75.     Defendant is a "seller" within the meaning of N.J.S.A. 56:12-15.

76.     Plaintiff is a "consumer" as contemplated by N.J.S.A. 56:12-15.

77.     At all relevant times, Defendant's "Terms of Use" constituted a consumer contract displayed and/or offered by seller to consumers and/or prospective consumers.

78.     At all relevant time, the "Terms of Use," as detailed above, included provisions that violated the legal rights of consumers and prospective consumers and/or responsibility of the seller.

79.     First, at all relevant times Defendant included on its website, www.mikasa.com, language in the "**Limitations on Liability**" provisions of the "Terms of Use" that purported to disclaim liability for virtually any claim under tort or negligence arising from their use of the website and/or purchase of goods or services from the website.

80.     Such exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." *See, Martinez-Santiago, supra,* 38 F.Supp.3d at 512-13.  Moreover, at all relevant times this provision purported to deprive Plaintiff of her right to a cause of action for any unreasonable risk of harm created by Defendant.  Likewise, the provision purported to absolve Defendant of its legal responsibility to exercise due care and refrain from creating an unreasonable risk of harm to consumers.  Such a provision is contrary to well-established principles of common law and contrary to the TCCWNA.

81.     In addition, at all relevant times these exculpatory provisions purported to absolve Defendant of any responsibility for manufacturing and/or selling a dangerous product and to bar Plaintiff from asserting a claim under the NJPLA for injuries suffered as a result of Defendant's dangerous products.  This provision is contrary to the New Jersey Products Liability Act and defies the Legislatures intent in attempting to address the "urgent need" to protect consumers from dangerous products. *See* N.J.S.A 2A:58C-1.  At all relevant times this provision purported to deprive Plaintiff of her right to a cause of action under the New Jersey Products Liability Act and purported to absolve Defendant of its responsibility to manufacture and sell safe products.

Notwithstanding the chilling effect on the marketplace as a whole were this provision deemed lawful, this provision defies the clear language of the NJPLA and thus violates the TCCWNA.

82. Further, at all relevant times, under the "Terms of Use" Defendant's **"Indemnification"** provision required Plaintiff and Class Members "TO BE FULLY RESPONSIBLE FOR (AND FULLY INDEMNIFY US AGAINST) ALL CLAIMS, LIABILITY, DAMAGES, LOSSES, COSTS AND EXPENSES, INCLUDING LEGAL FEES, SUFFERED BY US AND ARISING OUT OF ANY USER CONTENT YOU POST TO THE WEBSITE AND ANY BREACH OF YOUR REPRESENTATIONS AND WARRANTIES OR THESE TERMS OF USE BY YOU OR ANY OTHER LIABILITIES ARISING OUT OF YOUR USE OF THE WEBSITE, OR THE USE BY ANY OTHER PERSON ACCESSING THE WEBSITE USING YOUR COMPUTER OR INTERNET ACCESS ACCOUNT."

83. Under New Jersey law, it is "clearly established that 'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.'" *Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 516 (D.N.J. 2014) (quoting *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)); *Castro v. Sovran Self Storage, Inc.*, 2015 WL 4380775, at *9-*10 (D.N.J. July 16, 2015) (citing *Martinez-Santiago*). Additionally, under New Jersey law, unilateral contractual indemnity provisions are illegal where they are unilateral and the result of unequal bargaining power between the parties. *See Consumers Power Co. v. Curtiss-Wright Corp.*, 780 F.2d at 1096 (3d Cir. 1986); *Berrios v. United Parcel Service*, 627 A.2d 665 (1993). Defendant's language purported to go further than the above authority permits, and plainly violates the TCCWNA.

84. Moreover, at all relevant times the "Terms of Use" purported to absolve Defendant of its duty as a business to protect consumers and prospective consumers from the illegal acts of

third parties.  Defendant has a duty under the common law, *N.J.S.A.* 56:8-161, *et seq* and various Federal Regulatory Standards to protect customers from the illegal acts of third parties. *See Butler, supra* 89 *N.J.* 284 (business owner has a duty to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons . . . [and] the public interest lies in providing a reasonably safe place for a patron to shop[.]"); *Wyndham Worldwide Corp.,* 10 *F.Supp.3d* 608-09 (Plaintiff had cause of action against online business since substandard internet security measures were cause in fact of plaintiffs' injuries – despite intervening acts of third-party hackers.); *N.J.S.A.* 56:8-163.

85.     At all relevant times Defendant purported to do away with its responsibility to take reasonable steps to ensure security measures were in place to protect Plaintiffs and their personal information from the criminal acts of third-party hackers.  Likewise, at all relevant times Defendant purported to deny Plaintiffs' their legal right to pursue a cause of action against Defendants for their failure to take basic reasonable steps required under the common law, *N.J.S.A.* 56:8-161, *et al.* and applicable regulatory schemes.  This provision is unlawful and violates the TCCWNA.

86.     Moreover, at all relevant times the Terms of Use purported to bar Plaintiffs from seeking punitive damages for any and all harm caused by Defendant.  Such a provision is contrary to the NJPDA.  This provision purports to absolve Defendant of its legal obligation to refrain from maliciously and/or wantonly and/or willfully creating an unreasonable risk of harm to consumers.  Likewise, the provision purports to bar Plaintiffs who adequately plead and demonstrate punitive damages to be applicable from pursuing same.  This provision violates the TCCWNA.

87.     Finally, at all relevant times, Defendant's "Terms of Use" violated the TCCWNA in that they failed to state that the "**Limitations on Liability**" and "**Indemnification**" provisions were not enforceable against website visitors from New Jersey, as required by N.J.S.A. 56:12-16.

88.     Instead, under "**Miscellaneous**" Defendants note that portions of the Terms of use may be found to be "unlawful, void, or . . . unenforceable" without specifying which provisions are not lawful or enforceable in New Jersey.

89.     Pursuant to N.J.S.A. 56:12-17, Plaintiff and the Class are entitled to (a) a civil penalty of not less than $100, payable to Plaintiff and each Class Member, for each violation of the TCCWNA; and (b) reasonable attorneys' fees and court costs.

90.     Plaintiff reserves the right to identify additional provisions of the law violated by Defendant as further investigation and discovery warrant.

<u>**DEMAND/PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff on behalf of herself and members of the Class defined herein, prays for judgment and relief as follows:

A.      An Order certifying that this action may be maintained as a class action;

B.      Judgment awarding to Plaintiff and Class Members not less than $100 for each violation of the TCCWNA;

C.      An Order terminating the above-referenced language in the "**Limitations on Liability**" and "**Indemnification**"  provisions of the "Terms of Use" set forth on Defendant's website, www.mikasa.com, and ordering Defendant to remove said terms from its website insofar as they or any related or similar provisions are still present in the "Terms of Use" and continue to violate said provisions of law;

D.      Plaintiff's reasonable attorneys' fees and court costs; and

E.      Such other and further relief as the Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff and Class Members, pursuant to Fed. R Civ. P. 38(b), hereby demand trial by jury.

Respectfully submitted,
**CLARK LAW FIRM, PC**

By: _____
**MARK W. MORRIS, ESQ.**

Gerald H. Clark, Esq. NJ Bar No.048281997
Mark W. Morris, Esq. NJ Bar No. 118292015
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647
Fax: (504) 524-5763

Scott J. Ferrell, Esq.
Victoria Knowles, Esq.
Newport Trial Group
4100 Newport Place, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469

*Attorneys for Plaintiff*

Dated: August 11, 2016