UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE MURRAY,<br><br>    Plaintiff,<br><br>    v.<br><br>LIFETIME BRANDS, INC.,<br><br>    Defendant. | HONORABLE NOEL L. HILLMAN<br><br>CIVIL ACTION NO. 16-5016<br><br>OPINION |

**APPEARANCES:**

CLARK LAW FIRM
By: Mark W. Morris, Esq.
811 16th Avenue
Belmar, New Jersey 07719
    Counsel for Plaintiff

BATHGATE, WEGENER & WOLF, PC
By: Michael M. DiCicco, Esq.
    William Joseph Wolf, Esq.
    Christopher B. Healy, Esq.
One Airport Road
P.O. Box 2043
Lakewood, New Jersey 08701
    Counsel for Defendant

**HILLMAN**, United States District Judge:

    In this diversity suit brought pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), Plaintiff Nicole Murray asserts that Defendant Lifetime Brands, Inc., violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act

1

("TCCWNA"), N.J.S.A. 56:12-14 et seq., by allegedly failing to disclose certain information on its website.[1]

Lifetime moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Murray has not sufficiently alleged facts supporting a conclusion that she has suffered a concrete injury in fact as required by Article III of the United States Constitution.[2] Thus, Lifetime argues, this Court lacks Article III

---

[1] This is one of several putative class action suits filed in this District all asserting basically the same claim against various sellers. *See, e.g., Rubin v. J. Crew Group, Inc.,* 2017 U.S. Dist. LEXIS 46389 at *21-22 (D.N.J. Mar. 29, 2017)(Wolfson, D.J.)(dismissing putative class action TCCWNA complaint for lack of Article III standing, and observing, "[t]he Court is aware that there are numerous class actions filed in this district based upon similar TCCWNA violations alleged in this case. While the intent of the New Jersey legislature in enacting the TCCWNA is to provide additional protections for consumers in this state from unfair business practices, the passage of the Act is not intended, however, for litigation-seeking plaintiffs and/or their counsel to troll the internet to find potential violations under the TCCWNA without any underlying harm. In such instances, standing would be lacking."); *Hite v. Lush Internet Inc.*, 2017 U.S. Dist. LEXIS 40949 (D.N.J. Mar. 21, 2017)(Simandle, C.D.J.)(dismissing putative class action TCCWNA complaint for lack of standing); *Hecht v. Hertz Corp.*, 2016 U.S. Dist. LEXIS 145589 (D.N.J. Oct. 20, 2016)(Martini, D.J.)(dismissing putative class action TCCWNA complaint for lack of standing); *see also Candelario v. RIP Curl, Inc.,* 2016 U.S. Dist. LEXIS 163019 (C.D. Cal. Sept. 7, 2016)(dismissing putative class action New Jersey TCCWNA complaint for lack of Article III standing).

[2] Lifetime asserts additional arguments pursuant to Fed. R. Civ. P. 12(b)(6). However, in light of the disposition of the subject matter jurisdiction issue, the Court does not reach those other arguments.

subject matter jurisdiction[3] to hear this case and Murray's proposed class action complaint must be dismissed.

The Court holds that Murray has not sufficiently pled a concrete injury in fact. Accordingly, the Motion to Dismiss will be granted.

**I.**

Defendant Lifetime sells tableware (e.g., plates, cups, bowls, vases, etc.) on its website, mikasa.com. The Complaint alleges that on May 23, 2016, Plaintiff Murray purchased four fruit bowls through the website. (Compl. ¶ 4) The Complaint further alleges, "[u]pon receiving the four fruit bowls, [Murray] determined that the products did not meet her quality expectations as depicted on [Lifetime's] website. . . . [Murray] thereafter reviewed [Lifetime's] 'Terms of Use' on [Lifetime's] website." (Id.)

The Complaint alleges no further information specific to Murray. The remainder of the 28-page, 90-paragraph Complaint is mainly dedicated to explaining how Lifetime's website "Terms of Use" allegedly violates New Jersey's TCCWNA. Thus, while the

---

[3] The Court has statutory diversity of citizenship subject matter jurisdiction pursuant to CAFA. But, of course, this Court must have both statutory and constitutional subject matter jurisdiction in order to adjudicate the instant case. *See generally Martin v. Hunter's Lessee,* 14 U.S. 304, 329 (1816)(Story, J.)(Article III's "judicial power must, therefore, be vested in some court, by congress.").

3

Complaint asserts only one count - violation of the TCCWNA, Murray appears to assert six separate theories of liability. According to the Complaint, the Terms of Use violate the TCCWNA by allegedly:

> (1) Disclaiming tort liability through the use of an "exculpatory clause" (Compl. ¶¶ 17-20);
>
> (2) Including a "'Limitations on Liability' provision" which allegedly "deprive[s] customers of their rights and remedies under the New Jersey Product Liability Act" (Compl. ¶¶ 21-30);
>
> (3) Including an indemnification provision which provides that website users will indemnify Lifetime for liability arising out of users' posting users' own content on the website (Compl. ¶¶ 31-33);
>
> (4) Including a "'Limitations on Liability' provision" which allegedly "absolve[s] [Lifetime] of its duty to protect customers from harm arising from third-party acts" (Compl. ¶¶ 34-45);
>
> (5) Including a provision which allegedly "take[s] away [customers'] clearly established right under the [New Jersey Punitive Damages Act] to pursue punitive damages" against Lifetime (Compl. ¶¶ 46-52); and
>
> (6) Failing to specify which provisions of the Terms of Use are unenforceable against website visitors from New Jersey (Compl. ¶¶ 53-57).

The TCCWNA provides, in relevant part,

> No seller . . . shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the

4

> offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. § 56:12-15.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. Facial attacks contest the sufficiency of the pleadings, and in reviewing such attacks, the Court accepts the allegations as true. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009), *cert. denied*, 558 U.S. 1091 (2009).

## III.

"The irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)(internal citations and quotations omitted).

Lifetime challenges the first element, arguing that Murray fails to allege a sufficiently concrete injury in fact.

As the Supreme Court most recently explained in *Spokeo*, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist"; it must be "'real,' and not 'abstract.'" 136 S.Ct. at 1548. Further, some "intangible injuries can [] be concrete." *Id.* at 1549. "In determining whether an intangible harm constitutes an injury in fact," the Court considers (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and (2) whether Congress has "elevate[d] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id.* Murray asserts that she has suffered an unspecified intangible "informational injury." (Opposition Brief, p. 5)

A review of the relevant post-*Spokeo* caselaw suggests that intangible informational injury cases fall into two general categories: first, cases involving affirmative disclosures of legally protected information, *see, e.g., In re: Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 629 (3d Cir. 2017)(holding "[i]n light of the congressional decision to create a remedy for the unauthorized transfer of personal information, a violation of [the Fair Credit Reporting Act] gives rise to an injury sufficient for Article III standing purposes. . . . [T]he alleged disclosure of [plaintiffs'] personal information created a *de facto* injury."); and second, cases involving

6

"unlawful denial of access to information subject to disclosure." *In re: Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 273-74 (3d Cir. 2016).[4]

Murray argues that her case falls in the second category. (Opposition Brief, p. 5) Unfortunately, there is less guidance from the Supreme Court and the Third Circuit concerning injuries resulting from failures to disclose. *Spokeo* is an affirmative disclosure case, 136 S.Ct. at 1546 (alleged disclosure of inaccurate personal information), as are *Horizon* and *Nickelodeon*. *See also, Bock, Jr. v. Pressler & Pressler, LLP*, 658 F. App'x 63, 64 (3d Cir. 2016)("Bock alleged that Pressler and Pressler made a false or misleading representation in violation of the Fair Debt Collection Practices Act.").

*Spokeo* and *Nickelodeon*, however, cite with approval *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), which does provide an example.[5] In *Akins,* a group of voters challenged the FEC's decision not to bring an enforcement action to compel AIPAC, a political committee, to comply with the extensive disclosure

---

[4] While *Nickelodeon* identified this second category of intangible informational injury case, the facts of *Nickelodeon* place it in the first category. *See* 827 F.3d at 274 ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto*, injury, i.e., the unlawful disclosure of legally protected information.").

[5] Murray cites *Akins* in her brief but does not discuss it.

requirements of the Federal Election Campaign Act. 524 U.S. at 13. In holding that the respondent voters had suffered an injury in fact, the Court explained,

> [t]he 'injury in fact' that respondents have suffered consists of their inability to obtain information -- lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures -- that, on respondents' view of the law, the statute requires that AIPAC make public. There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election. Respondents' injury consequently seems concrete and particular.

*Akins*, 524 U.S. at 21.

Thus, the Supreme Court explained, the harm the voters suffered as a result of the failure to disclose was an impaired ability to make informed voting decisions.

Another example is *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440 (1989)(cited with approval in *Spokeo*).[6] In *Public Citizen*, plaintiffs sought disclosure of the names of potential federal judicial nominees pursuant to the Federal Advisory Committee Act. The Supreme Court held that the plaintiffs, the Washington Legal Foundation and Public Citizen, had suffered a sufficiently concrete injury, explaining,

---

[6] Murray cites *Public Citizen* in her brief but does not discuss it.

8

"[appellants] seek access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process." *Id.* at 449 (1989). Thus, similar to *Akins*, the harm the *Public Citizen* plaintiffs suffered as a result of the failure to disclose was an impaired ability to meaningfully participate in the judicial selection process.

Here, in contrast, Murray has not pled that she suffered any harm as a result of the alleged failure to disclose. Murray states in her brief that "'[t]he [New Jersey] Legislature enacted the TCCWNA to permit consumers to know the full terms and conditions of the . . . consumer contract into which they decide to enter.'" (Opposition Br. P. 8, quoting *Shelton v. Restaurant.com Inc.,* 214 N.J. 419, 431 (2013)) Critically, what Murray fails to do, however, is identify the harm that resulted from allegedly not knowing what she asserts the TCCWNA requires Lifetime to tell her. As a matter of logic, Murray cannot allege that she would have made a different purchasing decision because her Complaint is clear that she did not read the Terms of Use until after her purchase was delivered.

The omission of any allegation of harm is fatal to Murray's case. Only after a harm is identified can the Court go on to the first element of *Spokeo's* concreteness analysis, which asks "whether an alleged intangible harm has a close relationship to a

harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.[7]

Accordingly, the Court holds that the Complaint fails to sufficiently allege Murray's Article III standing to bring this suit. Lifetime's Motion to Dismiss the Complaint for lack of subject matter jurisdiction will be granted.

**IV.**

For the reasons set forth above, Lifetime's Motion to Dismiss for lack of subject matter jurisdiction will be granted and the Complaint will be dismissed without prejudice. An appropriate Order accompanies this Opinion.


Dated: May 5, 2016
At Camden, New Jersey                    ___s/ Noel L. Hillman___
                                         **Noel L. Hillman, U.S.D.J.**

---

[7] While Murray attempts to address this first element by arguing that "the TCCWNA is similar to the common law rule against the enforcement of unconscionable contracts" (Opposition Brief, p. 7), the argument misses the mark because it does not identify the harm Murray allegedly suffered.